**BEAMER SYNDICATE et al. v. STEWART et al.   (No. 6652.)**

(Court of Civil Appeals of Texas.. San Antonio.  Jan. 11, 1922.)

1. **Mortgages ⬦⟶342—No substitute trustee can be appointed, unless original trustee refuses to act.**

There can be no substitution of trustees until the original trustee refuses to act or to perform his duty.

2. **Judgment ⬦⟶256(1)—Jury ⬦⟶37—Court cannot render new decree contrary to that rendered on verdict responsive to issues.**

After rendering decree on a verdict responsive to the issues, a new decree directly opposite thereto is not authorized, since it would deprive the parties of the right of trial by a jury by substituting the finding of the court for that of the jury.

3. **New trial ⬦⟶28—Refusal to grant new trial for damages after specific performance decree rendered ineffective by conveyance to innocent purchasers held error.**

Where party against whom specific performance decree was rendered had conveyed land to innocent purchasers during the trial without knowledge of adverse parties, so that adverse parties' remedy against him was in personam, court's refusal to grant adverse parties a new trial, so as to permit them to proceed against such party for damages for breach of contract *held* error.

Error from District Court, Hidalgo County; Hood Boone, Judge.

Suit by the American Rio Grande Land & Irrigation Company against the Beamer Syndicate and others, in which the named defendant filed a cross-action against W. E. Stewart, who filed a cross-action against the named defendant, plaintiff, and others.  Judgment of dismissal as to plaintiff.  From the judgment rendered as between W. E. Stewart and the Beamer Syndicate and others, the Beamer Syndicate and others bring error.  Judgment reversed, and cause remanded, as to all parties except plaintiff, and affirmed as to plaintiff.

Don A. Bliss, of San Antonio, and W. L. Dawson, of Mission, for plaintiffs in error.

D. W. Glasscock and McDaniel & Bounds, all of McAllen, and J. P. Gause, of Mercedes, for defendants in error.

COBBS, J.  The American Rio Grande Land & Irrigation Company, on or about August 10, 1912, conveyed to John T. Beamer 56 parcels of land in Hidalgo county, Tex. The conveyances were made in separate parcels, with water contracts for irrigating the lands, and providing for liens thereon to secure the water charges.  The lands were partly paid for in cash; John T. Beamer executing his several vendor's liens for the deferred purchase price.

American Rio Grande Land & Irrigation Company filed its suit in the district court of Hidalgo county for the enforcement of the lien provided for in said deeds for the collection of about $32,000, delinquent water tax claims against said land.  The petition named as defendants the Beamer Syndicate, an express trust created under the provisions of a conveyance and declaration of trust dated June 15, 1916, between John T. Beamer, grantor, and W. D. Price, John T. Moffit, and others too numerous to mention, which included A. J. Summers, trustee in the deeds of trust, and W. E. Stewart, of Jackson county, Mo.  On or about the 1st day of July, 1919, the American Rio Grande Land & Irrigation Company sold the vendor's lien notes, secured by 56 tracts of land, to W. E. Stewart, executing conveyances passing the legal title. W. E. Stewart was also made a party.

Beamer Syndicate filed cross-action against W. E. Stewart, and W. E. Stewart, in his answer to said cross-action, filed a cross-action against Beamer Syndicate, John T. Beamer, and the American Rio Grande Land & Irrigation Company.  Prior to the hearing of the case, W. E. Stewart paid the water tax, and the suit of American Rio Grande Land & Irrigation Company was dismissed, with the understanding that the costs were to be paid by W. E. Stewart, but in drawing the decree it omitted to tax Stewart with the costs, and they were adjudged against Beamer Syndicate.  The dismissal of the American Rio Grande Land & Irrigation Company left the real issues to be determined between the Beamer Syndicate and W. E. Stewart.

The pleadings are entirely too long to set out in anything like detail, but substantially, as we gather, it is alleged that the American Rio Grande Land & Irrigation Company entered into an agreement with the trustees of the Beamer Syndicate, in the form of a letter, whereby it was agreed it would pay $100,000, to be deposited to its credit, then proceed to foreclose the deeds of trust liens on the lands securing the vendor's liens, and on August 5, 1919, that being the sales day, the Beamer Syndicate would purchase the land at the sale and execute its note for all purchase money due over and above the $100,000, and thereby the title to the land would be vested in it, subject to vendor's lien.

But the American Rio Grande Land & Irrigation Company, having sold all the notes given it by John T. Beamer to W. E. Stewart, by a conveyance of the superior title, retained by the said American Rio Grande Land & Irrigation Company in the said deeds, refused to accept the said payment of the $16,200, and directed that the same should be paid to W. E. Stewart, who owned said notes. W. E. Stewart refused to accept said payment on the notes, and declined to carry out the agreement that had been made between the

American Rio Grande Land & Irrigation Company on the one side and the trustees of the Beamer Syndicate on the other side. The American Rio Grande Land & Irrigation Company, after it had assigned and transferred the notes to W. E. Stewart, requested Arthur J. Summers, substitute trustee in the place of Duval West, to resign, which he did in response to said request.

W. E. Stewart thereupon appointed Paul W. Barron substitute trustee, and caused Barron to advertise all of the lands for sale in accordance with the terms of the deeds of trust, to take place at the courthouse door of Hidalgo county on August 5, 1919. The said Paul W. Barron appeared at said courthouse door at 10 o'clock a. m. on said August 5, 1919, and announced he would make the sales as such substitute trustee. The Beamer Syndicate and its trustees, represented by W. D. Price, and their attorney, F. W. Seabury, appeared and protested against the making of said sales, and there and then offered to W. E. Stewart, who was present in person, to carry out in all respects the agreement that had been made between the Beamer Syndicate and the American Rio Grande Land & Irrigation Company, prior to the time that the said notes had been sold and transferred unto the said W. E. Stewart by the American Rio Grande Land & Irrigation Company. The said W. E. Stewart refused to carry out said agreement, and directed the said Barron to proceed with the sales, which the said Barron did.

W. E. Stewart filed his second amended original answer in said cause, in reply to the said plea over against him of the said Beamer Syndicate and their trustees. Stewart also alleged that the American Rio Grande Land & Irrigation Company rescinded the contract of sale evidenced by the deeds made by it to John T. Beamer, and that the effect of this was that Stewart acquired complete title by virtue of the conveyance of said superior title. Stewart further alleged, upon the acquisition of said notes and superior title, he rescinded and treated as rescinded the John T. Beamer deeds, and took possession and control of said lands, and claimed the ownership ever since, and that the sale made by Paul W. Barron, as substitute trustee, was made only for the purpose of more fully evidencing upon the records the rescission of said deeds made to John T. Beamer, and partially removing any cloud from the title to said lands that might exist by reason of the rescission not being of record, and prayed that the Beamer Syndicate and its trustees take nothing by their said plea over against him.

The Beamer Syndicate and its trustees filed a supplemental answer on March 28, 1921, by way of reply to the answer of W. E. Stewart, containing some exceptions, and especially setting up facts with reference to the suit of John T. Beamer and the sale made by Alonzo M. Snyder. Prior to the beginning of the trial before the jury, the plaintiff, the American Rio Grande Land & Irrigation Company, took a nonsuit and dismissed its suit. The case was tried before a jury, but upon the conclusion of the testimony the judge instructed the jury as follows:

"You are instructed in this cause to return a verdict in favor of the Beamer Syndicate, and W. D. Price, John T. Moffit, C. J. Fulton, Alonzo M. Snyder, and H. C. Van Meter, trustees of the Beamer Syndicate, Ella L. McDonald, W. A. McDonald, Nellie G. Krueger, P. E. Krueger, Mattie S. Smith, John E. Smith, Delia Van Meter, H. C. Van Meter, Julia Look, against the defendant W. E. Stewart, and you will return a verdict in favor of the American Rio Grande Land & Irrigation Company against the parties hereinbefore named, in so far as they seek any affirmative relief against the said American Rio Grande Land & Irrigation Company."

The jury returned a verdict in accordance with such instruction, and a lengthy decree was entered thereon by the court, setting out various terms, details, and agreements between the parties, with description of all the lands in controversy, in part to wit:

"That * * * the conveyances of said land, made by the said P. W. Barron as such purported trustee unto the said W. E. Stewart, be and the same are hereby set aside, canceled, and held for naught, and that any apparent title conveyed thereby unto the said W. E. Stewart be divested out of the said W. E. Stewart, and be vested back in the said Beamer Syndicate and the trustees thereof, W. D. Price, John T. Moffit, C. G. Fulton, Alonzo M. Snyder, and H. C. Van Meter, and their assigns. All the foregoing described lands are situated in Hidalgo county, Texas.

"It is further ordered, adjudged and decreed by the court that the contract that was entered into between the American Rio Grande Land & Irrigation Company and the Beamer Syndicate on January 2, 1919, which was supplemental and concluded between the said parties on June 28, 1919, as alleged in the first amended original answer of the Beamer Syndicate filed in this cause on the 17th day of March, 1920, be performed specifically by the said W. E. Stewart, the assignee of the said American Rio Grande Land & Irrigation Company, and by the said Beamer Syndicate and the trustees thereof, and that the said Beamer Syndicate and its trustees deposit in the hands of the clerk of this court, on or before the 21st day of April, 1921, the sum of $112,728.50 in cash, leaving a balance of the sum of $99,882.83 unpaid of the notes that were executed by John T. Beamer, held by the said Stewart at the time of the sales made by the said P. W. Barron on August 5, 1919, and for said balance the said Beamer Syndicate—that is to say, the trustees for the Beamer Syndicate—shall execute and deposit with the clerk of this court at the same time, when said amount in cash is deposited with said clerk, their 148 promissory notes, being 4 in number for each of the foregoing described tracts of land, considering the third par-

cel as one tract, each 4 of said notes of equal amount secured by a lien on the particular tract, dated August 5, 1915, bearing interest at the rate of 6 per centum per annum, to be paid annually, and payable to the order of W. E. Stewart, in the town of Edinburg, in Hidalgo county, Texas, respectively, two, three, four, and five years after date; it being intended that the balance unpaid of said Beamer notes, after the said amount in cash has been applied as a credit pro rata on said Beamer notes, shall be divided, so that the balance unpaid for each of said tracts, according to the original purchase price of each tract per acre, will be divided into four equal parts, for each of which a separate note shall be executed by the trustees of the Beamer Syndicate, secured by a lien on such particular tract and deposited with said clerk, and said amount in cash and the said notes shall be paid over to and delivered to the said W. E. Stewart, upon demand by the said W. E. Stewart, or upon the demand of the assignee of the said W. E. Stewart, who shall execute and deliver to the said clerk his receipt therefor. When said amount in cash has so been paid over to the said W. E. Stewart, or his assignee, and said notes have been delivered to the said W. E. Stewart, or his assignee, by said clerk, and said receipt shall have been so given to said clerk therefor, this shall be conclusive that the said W. E. Stewart has assented to the terms of this decree.

"Should the trustees of the said Beamer Syndicate fail to deposit with the clerk of this court the said sum of money in cash and the said notes by the date fixed by this decree, then this shall have the effect of a rescission by the parties of the said contract herein decreed to be specifically enforced, and the said Beamer Syndicate and the trustees thereof shall have no right as to said lands. When the amount of all the notes given for a particular tract shall have been paid into the hands of the clerk of this court, or shall have been paid to the said W. E. Stewart or his assignee, and receipts so showing have been deposited with the clerk of this court, then the clerk of this court shall issue a certificate under his official signature and the seal of his office, and at the request of the trustees of the said Beamer Syndicate, or of any of them, shall acknowledge the execution of said certificate before some officer authorized by the laws of the state to take acknowledgment of the execution of instruments in order to entitle same to registration, and the said certificate of said clerk, when signed by him officially and attested by the seal of his office and delivered by him, shall be conclusive upon the parties to this suit and their privies that all of the notes given for such particular tract have been paid off and satisfied, and that such tract is discharged from the lien securing the same.

"It is further ordered, adjudged, and decreed by the court that the said Beamer Syndicate and its said trustees, and Ella L. McDonald, W. A. McDonald, Nellie G. Krueger, Mattie S. Smith, John E. Smith, Delia Van Meter, H. C. Van Meter, Julia Look, and Henry Look, do have and recover of the American Rio Grande Land & Irrigation Company and of the said W. E. Stewart all the costs of this suit, for which they may have their execution.

"It is further ordered, adjudged, and decreed by the court that the said Beamer Syndicate and its said trustees, and the said Ella L. McDonald, W. A. McDonald, Nellie G. Krueger, P. F. Krueger, Mattie S. Smith, John E. Smith, Delia Van Meter, H. C. Van Meter, Julia Look, and Henry G. Look, take nothing by their plea for affirmative relief against the said American Rio Grande Land & Irrigation Company, and that as to such claim for affirmative relief the said American Rio Grande Land & Irrigation Company go hence without day; it not being intended by this decree to in any way affect the rights of the said American Rio Grande Land & Irrigation Company to collect any water rents or rates that have accrued against said lands since the 5th day of August, 1919.

"The defendants P. W. Barron and Arthur J. Summers having disclaimed herein, they are dismissed from this suit, and it is adjudged that they recover of the American Rio Grande Land & Irrigation Company all their costs in this behalf incurred, for which they may have their executions. The defendants Paul W. Barron and Arthur J. Summers having disclaimed, they were dismissed from the suit, and were allowed their costs against the American Rio Grande Land & Irrigation Company, which had made them parties to the suit. As to all parties to this suit not hereinbefore disposed of, this suit is dismissed."

Mr. Stewart alone filed a motion for new trial, setting up many reasons therefor. Ascertaining that W. E. Stewart had acquired the title to the notes, and had conveyed all the lands to subsequent innocent purchasers, and that he had placed it beyond his power to rescind and carry out the provisions and terms of the agreement as found by the court and incorporated in the decree, so that Beamer Syndicate could acquire the land, the Beamer Syndicate filed its very elaborate sworn motion to set aside or modify the decree. It set up all the facts and circumstances connected with the case; that it did not know Stewart had parted with the title to the lands he had purchased at said foreclosure sale until after the trial, and had placed them beyond his power to enforce and compel specific performance of the decree, so as to receive the benefits when he paid the price required in such decree for the lands, being the substantial part of the trade, and having paid large sums already for that purpose, which he would lose, for he could only acquire the benefit of his bargain by the payment of the money required by the court as the condition, and the execution of the notes for the remaining purchase money.

It can hardly be conceived of a more equitable request for a new trial under the circumstances, and the equities set out in the sworn motion are most persuasive. It should have been granted, so that the question of Stewart's personal liability, if any, could be resorted to in a direct personal suit, instead of paying this precedent required money for land that had passed out of Stewart's possession to innocent purchasers, thereby allowing Stewart to hold in his hands the proceeds of

the sale of the land sold to other parties, as well as this large sum of money. Stewart being a nonresident and without any security in the state, no new suit might secure personal service; whereas, he having been properly served and had appeared, all the matters could be adjusted in this case. The court refused the relief prayed for and overruled the motion.

Then W. E. Stewart filed a motion, as he designated it, to correct, set aside, or modify the original decree, or enter a new decree. This motion was granted in the following terms:

"That motion of the defendants Beamer Syndicate et al., above described and filed herein on the 15th day of April, A. D. 1921, be and the same is hereby in all things overruled and denied. That the motion of the defendant W. E. Stewart, above described and filed herein on the 27th day of April, A. D. 1921, be and the same is hereby granted."

That part of the decree is as follows:

"That the following be and is hereby made and entered as the final judgment and decree of this court in this cause, namely:

"The plaintiff herein, the American Rio Grande Land & Irrigation Company, having in open court and before this cause was submitted to the jury taken a nonsuit as to the cause of action alleged in its petition herein, said nonsuit is allowed, and the cause of action alleged by plaintiff in its petition is hereby dismissed without prejudice.

"That the defendants, Beamer Syndicate et al., W. D. Price, John T. Moffit, Alonzo M. Snyder, C. J. Fulton and H. C. Van Meter, trustees, and Ella McDonald, W. A. McDonald, Nellie G. Krueger, P. F. Krueger, Mattie S. Smith, John Smith, Delia Van Meter, Julia Look, and Henry Look, take nothing by their cross-action herein against the defendant W. E. Stewart, and also take nothing as against the plaintiff, American Rio Grande Land & Irrigation Company; and that as to such cross-action of said defendants, the defendant W. E. Stewart, and the plaintiff, American Rio Grande Land & Irrigation Company, go hence without day and with their costs.

"That the defendant W. E. Stewart and the plaintiff American Rio Grande Land & Irrigation Company each do have and recover of and from the defendants Beamer Syndicate, W. D. Price, John T. Moffit, Alonzo M. Snyder, C. J. Fulton, and H. C. Van Meter, trustees, and Ella L. McDonald. W. A. McDonald, Nellie G. Krueger, P. F. Krueger, Mattie S. Smith, John Smith, Delia Van Meter, Julia Look, and Henry Look, and each of them, all the costs of this suit for which they may have their execution.

"That the defendants P. W. Barron and Arthur J. Summers, having disclaimed herein, are dismissed from this suit, and it is adjudged that they recover of the American Rio Grande Land & Irrigation Company all their costs in this behalf incurred, for which they may have their execution.

"As to all other parties to this suit not hereinbefore disposed of this suit is dismissed."

[1] The first question of law presented is whether the sale under the authority and powers expressed in the deed of trust by Alonzo M. Synder was void. After W. E. Stewart acquired the notes by purchase, he requested Arthur J. Summers, the trustee named in the deed of trust, to resign. The written resignation, if in the statement of facts, is not indexed, and a search through the statement fails to locate it; but we find in the record of the proceedings, which include another suit of Beamer v. Snyder, a statement on an attached slip of paper, saying such resignation was introduced. Mr. Summers testified:

"That witness resided at Mercedes, Tex., and was residing there during August, 1919; that witness was appointed as substitute trustee in the place of Duval West, the original trustee, in all the deeds of trust that were executed by John T. Beamer to secure the payment of the notes that he had given to the American Rio Grande Land & Irrigation Company; that witness did not continue to act as trustee; that he could not very well act, for he was away for two years; that he resigned about the 1st of July, 1919; that how he came to resign was that he was asked to resign; that witness believed it was Mr. Witmer that had witness to sign the instrument of resignation; that Mr. Witmer was the secretary and treasurer of the American Rio Grande Land & Irrigation Company, witness thought, and that it was in response to his request that witness resigned as trustee."

It was very clear that his resignation was requested by the holder of the notes at that time. The indefinite statement that he could not well act because he was away two years is no excuse, because he was residing in Mercedes, and was so residing in Mercedes during August, when the sale was made. It is too well settled that until the trustee refuses to act, or what is equivalent thereto, as such, in the performance of the duty, there can be no substitution in the manner attempted. It is an important right, and in which both grantor and grantee, being interested, join to create the power. Davis v. Hughes, 38 Tex. Civ. App. 473, 85 S. W. 1161.

A further material question for determination is, whether or not the court should have granted the plaintiffs in error a new trial. Both the Beamer Syndicate and W. E. Stewart seem satisfied with the testimony as supporting their several contentions, for each sought by motion to secure from the court an instructed verdict.

Without discussing the facts, and the merits of the case, otherwise than we have done, because of the view we take, the judgment must be reversed and remanded for further hearing and trial, as no party has appealed from the first decree to this court. W. E. Stewart, defendant in error, prepared the case for appeal, but that was abandoned, because by his own acts and subsequent motion the final adverse decree was entered in lieu of the original. The effect of the last decree is a denial to appellant of any of the

benefits of the jury's findings and the court's decree thereon. The original decree was based upon the jury's instructed verdict. They were discharged, and it became final in so far as it was a decree entered upon a jury's verdict in a trial by the jury. But the court, in the exercise of its equitable powers, wrote into the decree certain terms and provisions by which the Beamer Syndicate might be permitted to acquire the title to the land; that was by paying certain sums of money and executing certain notes. In other words, it was to compel the specific performance of the terms of the contract that the court, without the aid of a jury's finding, interpolated therein.

[2] The terms of the decree itself were final, for it provided, in case the trustees of the said Beamer Syndicate should—

"fail to deposit with the clerk of this court the said sum of money in cash and the said notes by the date fixed by this decree, then this shall have the effect of a rescission by the parties of the said contract herein decreed to be specifically enforced, and the said Beamer Syndicate and the trustees thereof shall have no right as to said lands."

This decree, therefore, was complete in its own terms and disposed of all the issues. It is true the court has during the term control of its judgment until its final adjournment, but the court, at no time after it has submitted questions to the jury for a finding upon material issues, can wholly change the jury's findings, so as to reflect a changed situation and submit its own or a different finding for the original one made, if such finding be in response wholly to the issues. However broad the scope of its equity powers to control its judgments, or suspend or set aside the findings of juries, may be, the court has no power or authority to write a completely new and adverse verdict directly opposite to the decree written upon the verdict, because it would be equivalent to a new finding and new judgment predicated upon the jury's verdict, whether it be instructed by the court or their independent findings. In such cases the only power the court has is to modify, annul, or set aside, not to write, one that gave the opposite relief to that the jury found. Such would have the effect to deprive the parties of the right of trial by a jury.

[3] We think the motion of Beamer Syndicate showed merit and should have been granted. It had made effort and had placed itself within the proper position to secure the relief. It would have been foolish to pay the money over, so that Mr. Stewart could hold that as well as such sums that he received from sales of the land, for by the sale of the land he had placed it beyond his power to make the titles. It is too well settled to cite authorities that the court had the power to grant the motion. Appellee Stewart, by his purchase from American Rio Grande Land & Irrigation Company of the land with knowledge of its obligation, was subordinated to the agreements of Beamer Syndicate to secure the title to said lands by paying the agreed amount recited in the decree. And, so knowing, Stewart proceeded with and secured sales of the land, thereby placing the lands beyond the power of the court to enforce its decree. Appellants cannot now have the decree operate on the lands sold to innocent purchasers. His only remedy is against Stewart in personam. Unless this second decree is set aside, appellants are practically without remedy. This can only be done now by reversing the judgment, so as to permit further repleading by all the parties who are now before the court.

The judgment is therefore reversed, and cause remanded, as to all the parties except the American Rio Grande Land & Irrigation Company, and as to it the judgment is affirmed.